ELLEN B. BURNS, District Judge.
 

 Defendant Richard RePass has brought this appeal from a judgment of the United States District Court for the Southern District of New York (William C. Conner, Judge), which granted the motion of plaintiff, United States of America, for summary judgment against him and his co-defendants to recover, under the False Claims Act, 31 U.S.C. § 231
 
 et seq.
 
 (1976 and Supp. 1982),
 
 [1]
 
 moneys paid out by the Small Business Administration (SBA) on a falsely obtained loan guarantee, together with statutory penalties for making such a false claim.
 
 [2]
 
 The judgment as modified is affirmed.
 

 The complaint alleged as follows: In or about October, 1972, defendants Marcus George Hero, a financial consultant, Gerald Devins, an accountant, and Leonard Randell, a creditor of Gordon Saks, chairman of the board of Modern Century Co., Inc. (Modern), a New York publishing company, approached Saks and appellant RePass, president of Modern, and offered to assist Saks and RePass in obtaining an SBA-guaranteed bank loan of $350,000 for Modern in return for a fee of approximately $70,000. Modern was in financial difficulty at that time and Saks and RePass agreed to the proposal. Co-defendant Salvatore Catala-notto, a/k/a Catale, an accountant, agreed to use his influence with Underwriters Bank and Trust Company (Underwriters) to secure the loan from Underwriters in return for a two per cent commission. Catale submitted the loan documents prepared by Saks and RePass to Underwriters which approved the loan, subject to a 90% guarantee by the SBA which was thereafter obtained. Modern subsequently defaulted on the loan and the SBA paid Underwriters the guaranteed amount, plus interest, less payments made before the default.
 

 The complaint alleged that the defendants knowingly made the following false statements in the loan application submitted to Underwriters and the SBA:
 

 (a) Modern was portrayed as a distribution company, whereas in fact it was a publishing company, which defendant Hero stated could not quality [sic] for an SBA loan.
 

 
 *156
 
 (b) The documents represented that no compensation was to be paid in connection with the loan application, whereas in fact the defendants had arranged that Hero, Randell and Devins would receive $75,000 and other considerations as fees for helping with the application, and that Catale would receive a 2% commission for helping to persuade Underwriters to approve the application.
 

 (c) The figures listed for use of proceeds, collateral, assets, gross sales, sales returns, profit and projections were grossly-overstated.
 

 Subsequently, but prior to the commencement of this action, criminal proceedings were brought against Hero, Saks, Randell and Devins. Appellant RePass, named as an unindicted co-conspirator, testified at trial.
 

 The Government contended in its summary judgment motion that appellant RePass is estopped from denying the allegations of the complaint because he had admitted all of its material facts in his trial testimony. RePass contended the motion should be denied and his cross-motion for summary judgment granted because he was released from the debt in an order of discharge issued by the United States Bankruptcy Court in the District of Connecticut. In his petition for voluntary bankruptcy appellant listed, as an unsecured claim, “Note dated Nov. 1972” in favor of the SBA in the amount of approximately $331,592. He argued that the Government was required to file an application to determine the dis-chargeability of the debt under § 17(c)(2) of the Bankruptcy Act, 11 U.S.C. § 35(c)(2) (1976), and that, since it failed to do so, his discharge of March 31, 1976, covers the Government’s claim and the Government is barred from pressing the claim in this action. He further claimed that the Government is also barred by equitable principles of laches, waiver and estoppel from asserting its claim now, having failed to do so in the bankruptcy proceeding and having allowed four years to elapse thereafter during which he has started a new business and “rebuil[t] his entire life.”
 
 [3]
 

 The court below held that the Government’s False Claims Act claim states a cause of action based on an intentional tort, a claim not provable under § 17(a) and therefore not dischargeable by appellant’s discharge in bankruptcy, irrespective of whether the Government filed an application to determine dischargeability under § 17(c)(2). The court also found no grounds for estoppel, holding that appellant could not reasonably rely on the Government’s failure to press the False Claims Act claim in the bankruptcy proceedings as an indication it had abandoned its claim.
 

 On this appeal the issues are whether the District Court erred in holding (1) that the Government claim against appellant was not dischargeable in bankruptcy and (2) that the equitable defenses of laches, waiver and estoppel do not bar the prosecution of the Government claim.
 

 I.
 

 Under § 17(a) of the Bankruptcy Act, effective at the time of appellant’s discharge and, therefore, applicable to his contentions on this appeal,
 
 In re Spell,
 
 650 F.2d 375 (2d Cir. 1981), a discharge in bankruptcy released the bankrupt from all his provable debts
 

 except such as ... (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another; ... [or] (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity ... ”.
 

 
 *157
 
 Section 17(c)(2) provided that a creditor claiming a debt to be exempt from discharge under § 17(a)(2) or (4) must file an application for determination of discharge-ability within the time fixed by the court under Bankruptcy Rule 409(a)(2). It is undisputed the Government filed no such application. The Government claims the debt in this case was not provable within the meaning of § 17 and no filing was required.
 

 Section 63(a) of the Bankruptcy Act, 11 U.S.C. § 103(a) (1976), provided in relevant part: “Debts of the bankrupt may be proved ... which are founded upon (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition ... [or] (4) an open account, or a contract express or implied ... ”. Appellant’s obligation as guarantor qualifies as a provable debt under § 63(a) either as a fixed liability, an express contract or an implied contract (based on the Government’s alternative theory of unjust enrichment). Were recovery here sought solely on the note and/or the unjust enrichment theory, the Government would be precluded by its failure to apply under § 17(c) for a determination of dischargeability.
 

 However, the Government in this action seeks not only recovery of the moneys paid by the SBA, but also recovery of double damages and a $2,000 forfeiture under the False Claims Act. The gravamen of this claim is the tort of intentional fraud and misrepresentation.
 
 United States v. Ekelman & Associates, Inc.,
 
 532 F.2d 545, 548 (6th Cir. 1976). As a general rule, intentional tort claims are not provable in bankruptcy except when they have been reduced to judgment prior to the filing of the petition,
 
 Coclin Tobacco Co. v. Griswold,
 
 408 F.2d 1338, 1342 (1st Cir.)
 
 cert. denied,
 
 396 U.S. 940, 90 S.Ct. 373, 24 L.Ed.2d 241 (1969), but debts originating upon a contract, express or implied, are provable, even though the plaintiff may elect to bring an action for fraud,
 
 Crawford v. Burke,
 
 195 U.S. 176, 193, 25 S.Ct. 9, 13, 49 L.Ed. 147 (1904) (conversion of reversionary stock interests). See also
 
 Copeland v. Emroy Investors, Ltd.,
 
 436 F.Supp. 510 (D. Del. 1977),
 
 aff’d without opinion,
 
 586 F.2d 834 (3rd Cir. 1978) (securities fraud). Because the Government’s claim against appellant here is based on the SBA payout on a falsely obtained loan guarantee, it is based, at least to the extent of the amount paid out, on a debt originating upon a contract or a fixed liability, either of which supports a provable debt.
 

 The False Claims Act with its specific penalty of a $2,000 forfeiture and double damages has the objective “broadly to protect the funds and property of the Government from fraudulent claims,”
 
 Rainwater v. United States,
 
 356 U.S. 590, 592, 78 S.Ct. 946, 948, 2 L.Ed.2d 996 (1958). “This remedial statute reaches ... to all fraudulent attempts to cause the Government to pay out sums of money.”
 
 United States v. Neifert-White Co.,
 
 390 U.S. 228, 233, 88 S.Ct. 959, 962, 19 L.Ed.2d 1061 (1968). The chief purpose of the civil penalties of the act is “to provide for restitution to the government of money taken from it by fraud, and ... the device of double damages plus a specific sum was chosen to make sure that the government would be made completely whole.”
 
 United States ex rel. Marcus v. Hess,
 
 317 U.S. 537, 551-52, 63 S.Ct. 379, 387-388, 87 L.Ed. 443 (1943). The double damages “are necessary to compensate the Government completely for the costs, delays, and inconveniences occasioned by fraudulent claims.”
 
 United States v. Bornstein,
 
 423 U.S. 303, 315, 96 S.Ct. 523, 530, 46 L.Ed.2d 513 (1976) (footnote omitted).
 

 These penalties are not wholly allowable under the Bankruptcy Act. Section 57(j) of that act, 11 U.S.C. § 93(j) (1976), specifically prohibits the allowance of “[d]ebts owing to the United States ... as a penalty or forfeiture ... except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose.” This provision of the act is designed to preclude the assessment of penalties against the innocent creditors of a bankrupt who has been guilty of some default or wrong.
 
 Simonson v. Granquist,
 
 369 U.S. 38, 40-41, 82 S.Ct. 537, 538-539, 7
 
 *158
 
 L.Ed.2d 557 (1962). Only that portion of the damages which represents the amount of the pecuniary loss sustained by the transaction, here the SBA payout, is within the purview of section 57(j) of the act.
 

 While § 57(j) refers to allowability and not to provability, we think that the better course is to read § 57(j) in light of § 63. Thus, the “pecuniary loss” sustained by the Government and allowable under § 57(j) would be determined by reference to § 63’s provability provisions.
 
 See Sherwood
 
 v.
 
 United States,
 
 228 F.Supp. 247, 250 (E.D.N.Y. 1964). In this case, of the Government’s claim for double damages plus the $2,000 statutory. forfeiture, only the amount of single damages — the pecuniary loss — was provable under § 63(a) and hence dischargeable under § 17(a). Because the Government did not file an application to determine dischargeability of this amount under § 17(c)(2), the claim for this amount was discharged. The False Claims Act claim against appellant must therefore be reduced by the amount paid by the SBA.
 

 II.
 

 Appellant’s claims of estoppel, laches and waiver are equally unavailing. Equitable estoppel as a defense is not available against the United States,
 
 see Federal Crop Ins. Corp. v. Merrill,
 
 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947);
 
 United States v. City and County of San Francisco,
 
 310 U.S. 16, 32, 60 S.Ct. 749, 757, 84 L.Ed. 1050 (1940), except in the most serious of circumstances,
 
 see Schweiker v. Hansen,
 
 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam), not present here. Laches is not a defense to an action filed within the applicable statute of limitations,
 
 United States v. Mack,
 
 295 U.S. 480, 489, 55 S.Ct. 813, 817, 79 L.Ed. 1559 (1935), nor is it available against the United States,
 
 United States v. Summerlin, 310 U.S.
 
 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940). Waiver, the intentional relinquishment of a known right, here the right to seek statutory penalties under the False Claims Act, cannot be inferred from the Government’s decision not to pursue its contract claim in the bankruptcy proceeding.
 

 III.
 

 The judgment of the court below awarded to the United States $820,551.30 against appellant and several codefendants, consisting of the $2,000 forfeiture, double the SBA payout, prejudgment interest of $207,669.44 and costs of $89.38. The judgment must be modified by deduction therefrom of the prejudgment interest, not allowable on damages under the False Claims Act,
 
 United States v. Foster Wheeler Corp.,
 
 447 F.2d 100, 102 (2d Cir. 1971), and of the amount of appellant’s obligation on the note which was discharged,
 
 i.e.,
 
 $305,396.24.
 

 Accordingly, the judgment is modified by reducing the total recovery against defendant RePass to $307,485.62. As so modified the judgment is affirmed.
 

 [1]
 

 . The False Claims Act, 31 U.S.C. § 231 (1976) provides in relevant part:
 

 Any person ... who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, or who enters into any agreement, combination, or conspiracy to defraud the Government of the United States, or any department or officer thereof, by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim ... shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit.
 

 [2]
 

 . The docket entries reflect that the actual judgment was ordered by Judge Sofaer.
 

 [3]
 

 . RePass pleaded an affirmative defense of coercion and duress which was rejected by the court below and is not pursued on appeal.