In re MAXWAY CORPORATION;

In re Danners, Incorporated, Debtors.

MAURICE SPORTING GOODS, INCORPORATED, Plaintiff– Appellant,

v.

MAXWAY CORPORATION, by and through their OFFICIAL COMMITTEE OF UNSECURED CREDITORS; Danners, Incorporated, by and through their Official Committee of Unsecured Creditors, Defendants–Appellees.

No. 93–2552.

United States Court of Appeals, Fourth Circuit.

Argued May 11, 1994.

Decided June 23, 1994.

---

**ARGUED:** Kirby Todd Phillips, Waggoner, Hamrick, Hasty, Monteith & Kratt, Charlotte, NC, for appellant. Rebecca Sofley Henderson, Durham, Wyche, Story, Whitley & Henderson, L.L.P., Charlotte, NC, for appellees. **ON BRIEF:** John H. Hasty, G. Bryan Adams, III, Waggoner, Hamrick, Hasty, Monteith & Kratt, Charlotte, NC, for appellant. Albert F. Durham, Durham, Wyche, Story, Whitley & Henderson, L.L.P., Charlotte, NC, for appellees.

Before WILKINS, Circuit Judge, and SPROUSE and CHAPMAN, Senior Circuit Judges.

Affirmed by published opinion. Judge WILKINS wrote the opinion, in which Senior Judge SPROUSE and Senior Judge CHAPMAN joined.

## OPINION

WILKINS, Circuit Judge:

During the bankruptcy proceedings of Maxway Corporation and Danners, Incorporated (collectively "Debtors"), the Official Committee of Unsecured Creditors (the Committee) brought this action against Maurice Sporting Goods, Incorporated (Maurice), seeking to avoid and recover, as preferential transfers, Debtors' payments to Maurice made during the 90–day period prior to the filing of Debtors' bankruptcy petitions. *See* 11 U.S.C.A. § 547 (West 1993). The bankruptcy court granted summary judgment for the Committee in the amount of $543,038.92, and the district court affirmed. On appeal, Maurice principally argues that the Committee's avoidance action is barred by the two-year statute of limitations set forth in 11 U.S.C.A. § 546(a)(1) (West 1993). We reject Maurice's contention that the two-year statute of limitations in § 546(a)(1) begins to run against a debtor in possession upon the filing of a Chapter 11 bankruptcy petition and therefore affirm.

## I.

Debtors operated discount department stores in North Carolina. Maurice, a sporting goods distributor, sold merchandise to Debtors on open account. After receiving an invoice from Maurice, Debtors ordinarily made payment within four months, indicating the invoice paid on the check voucher. Between July 18, 1988 and September 7, 1988, a period in which Debtors were experiencing extreme financial difficulty, Debtors made eight separate payments to Maurice.

On October 7, 1988, Debtors voluntarily filed bankruptcy petitions for Chapter 11 reorganization. During the postpetition period, Debtors continued to manage their property as debtors in possession; a trustee was never appointed. Because postpetition revenues were insufficient to fund a reorganization, the bankruptcy court confirmed a plan in August 1990 that provided for the liquidation of Debtors' assets. The plan also authorized the Committee to file actions on behalf of Debtors for the benefit of the estate.

On July 25, 1991, over two years after the petitions were filed but prior to the close of the case, the Committee filed this action, seeking to recover the payments Debtors made to Maurice during the 90 days prior to the petition date. On cross motions for summary judgment, the bankruptcy court granted judgment in favor of the Committee in the amount of $543,038.92. After conducting a de novo review, the district court affirmed.

## II.

The issue presented is whether the two-year statute of limitations for bringing avoidance actions begins to run upon the "appointment" of a debtor in possession, *i.e.*, the filing of a Chapter 11 bankruptcy petition. *See* 11 U.S.C.A. § 1101(1) (West 1993). Although it is one of first impression in this circuit, numerous other courts have addressed this issue. Relying on the plain language of § 546(a)(1), the overwhelming majority of bankruptcy and district courts have concluded that the two-year statute of limitations begins to run only upon the appointment of one of the trustees specified in § 546(a)(1). *See, e.g., Bonwit Teller, Inc. v. Jewelmasters (In re Hooker Invs., Inc.),* 162 B.R. 426 (Bankr.S.D.N.Y.1993) (listing cases); *Brin–Mont Chems., Inc. v. Worth Chem. Corp. (In re Brin–Mont Chems., Inc.),* 154 B.R. 903 (M.D.N.C.1993) (same). However, the four Courts of Appeals that have addressed the issue have concluded that the two-year statute of limitations begins to run against a debtor in possession upon the filing of a Chapter 11 bankruptcy petition. *See U.S. Brass & Copper Co. v. Caplan (In re Century Brass Prods., Inc.),* 22 F.3d 37 (2d Cir. 1994); *Construction Mgt. Servs., Inc. v. Manufacturers Hanover Trust Co. (In re Coastal Group, Inc.),* 13 F.3d 81 (3d Cir. 1994); *Upgrade Corp. v. Government Tech. Servs., Inc. (In re Softwaire Centre Int'l, Inc.),* 994 F.2d 682 (9th Cir.1993); *Zilkha Energy Co. v. Leighton,* 920 F.2d 1520 (10th Cir.1990). We review de novo the conclusion of the bankruptcy court that the two-year statute of limitations in § 546(a)(1) begins to run only upon the appointment of one of the trustees specified in § 546(a)(1). *See Canal Corp. v. Finnman (In re Johnson),* 960 F.2d 396, 399 (4th Cir.1992).

### A.

Statutory interpretation necessarily begins with an analysis of the language of the statute. *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985). If the language is plain and "the statutory scheme is coherent and consistent," there is no need to inquire further. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1989). "[T]he sole function of the courts is to enforce [the statute] according to its terms." *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). Therefore, courts should venture beyond the plain meaning of the statute only in those rare instances in which there is a clearly expressed legislative intent to the contrary, *Russello v. United States,* 464 U.S. 16, 20, 104 S.Ct. 296, 298–99, 78 L.Ed.2d 17 (1983), in which a literal application of the statute would thwart its obvious purpose, *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571,

102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982), or in which a literal application of the statute would produce an absurd result, *United States v. American Trucking Ass'ns,* 310 U.S. 534, 543, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940).

 Section 546(a) of the Bankruptcy Code provides:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
>
> (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or
>
> (2) the time the case is closed or dismissed.

11 U.S.C.A. § 546(a) (West 1993). The language of the statute is clear on its face. It requires that an avoidance action under §§ 544, 545, 547, 548, or 553 be commenced within two years after the appointment of one of the specified trustees or prior to the close or dismissal of the case, whichever occurs earlier. Under this plain language, the Committee's avoidance action was timely filed because a trustee had not been appointed and the action was commenced prior to the close or dismissal of the case.

Nonetheless, Maurice argues that the plain language of the statute cannot be given effect because it is inconsistent with the language of 11 U.S.C.A. § 1107(a) (West 1993) and contrary to clearly expressed legislative intent regarding the purpose of § 1107(a). Section 1107(a) provides:

> Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

11 U.S.C.A. § 1107(a). By its terms, § 1107(a) provides that the rights, powers, and duties conferred upon a debtor in possession are subject to any limitations on a Chapter 11 trustee. Moreover, in the legislative history of § 1107(a), Congress stated that § 1107(a) "places a debtor in possession in the shoes of a trustee in every way.... He is ... subject to any limitations on a chapter 11 trustee." S.Rep. No. 95–989, 95th Cong., 2d Sess. 116 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5787, 5902. Maurice argues that an application of the plain meaning of § 546(a)(1) is inconsistent with the language of and contrary to the legislative history of § 1107(a) because it affords debtors in possession greater rights than Chapter 11 trustees. This is so, Maurice asserts, because debtors in possession are foreclosed from bringing avoidance actions only upon the close or dismissal of the case, whereas Chapter 11 trustees are additionally prohibited from commencing avoidance actions more than two years after their appointment. For this reason, Maurice contends that the two-year statute of limitations in § 546(a)(1) should be interpreted as beginning to run upon the "appointment" of a debtor in possession. And, because the Committee's action was commenced more than two years after the filing of Debtors' petitions, Maurice maintains that the action is untimely.

We believe that Maurice's argument misconstrues the function and interaction of §§ 546(a) and 1107(a). Section 1107(a) confers upon a debtor in possession the power and authority of a Chapter 11 trustee. The operation of § 1107(a) thus provides standing to debtors in possession to seek the avoidance of preferential transfers even though § 547 explicitly refers only to trustees. Subsections (b)-(g) of § 546 similarly limit a trustee's—and through the operation of § 1107, a debtor in possession's—authority to recover property under §§ 544, 545, 547, 548, or 549. *See* 11 U.S.C.A. § 546(b)-(g) (West 1993). However, unlike the remainder of § 546, subsection (a) is not directed at limiting the authority of trustees to recover property. Rather, it establishes the time period within which an action may be commenced under §§ 544, 545, 547, 548 or 553. It provides that no one may bring an avoidance action more than two years after the appointment of the enumerated trustees, not that the enumerated trustees may not commence an avoidance action more than two years

after their appointment. Thus, by its terms, § 546(a) applies both to trustees and debtors in possession, requiring both to commence an action within the specified time periods. The appointment of the various trustees is merely the starting point from which the clock begins to run in paragraph (1). Accordingly, an application of the plain language of § 546(a)(1) is not, in our view, inconsistent with the general statutory scheme of functional equivalency established by the language and legislative history of § 1107(a).

Also, our conclusion that the statute of limitations contained in § 546(a)(1) does not begin to run upon the "appointment" of a debtor in possession is consistent with the congressional decision that the statute of limitations should not begin to run upon the appointment of some types of trustees. For example, when a debtor files a voluntary petition for relief under Chapter 7, the United States trustee appoints an interim trustee pursuant to 11 U.S.C.A. § 701 (West 1993). *See* 11 U.S.C.A. § 301 (West 1993). Yet, the two-year limitations period for filing an avoidance action does not begin to run until a permanent trustee is selected pursuant to 11 U.S.C.A. § 702 (West 1993). *See* 11 U.S.C.A. § 546(a)(1); *see also Kroh v. T.R.M. Mfg. (In re Conco Bldg. Supplies, Inc.)*, 102 B.R. 190 (9th Cir. BAP 1989). Generally, interim trustees assume the limited role of performing administrative functions and preserving the assets of the estate. *See* 4 Lawrence P. King, *Collier on Bankruptcy*, ¶ 701.01 (15th ed.1994). Thus, they are not as likely as § 702 trustees to commence avoidance actions. Similarly, debtors in possession are not likely to commence avoidance actions, if for no other reason, because they are normally more interested in preserving relationships with their creditors than in maximizing the size of the estate. *See, e.g., In re Hooker*, 162 B.R. at 437; *Katon v. International Bank of Miami, N.A. (In re Tamiami Range & Gun Shop, Inc.)*, 130 B.R. 617, 619 (Bankr.S.D. Fla.1991) (recognizing that a debtor in possession may also actively seek to delay a Chapter 11 administration beyond the two-year statute of limitations without pursuing an avoidance action in order to bar action against family or friends).[1] In both instances, postponing the start of the two-year statute of limitations until the appointment of a trustee who is likely to bring an avoidance action prevents any delay in the commencement of such an action from penalizing unsecured creditors who would benefit from the recovery of a preferential or fraudulent transfer.

### B.

In sum, we recognize that the question presented is difficult and that legitimate policy arguments exist on both sides. However, the language of § 546(a)(1) is plain; it provides that the two-year statute of limitations for bringing an avoidance action does not begin to run until the appointment of one of the trustees specified in § 546(a)(1). Application of the plain language of § 546(a)(1) in Chapter 11 cases would not produce an absurd result, nor is it inconsistent with the language of or contrary to the legislative history of § 1107(a). And, as demonstrated by the operation of § 546(a)(1) in Chapter 7 liquidations, interpreting the two-year statute of limitations as not beginning to run upon the filing of a Chapter 11 petition is consistent with the statutory scheme of limiting the time within which avoidance actions may be commenced without causing undue

---

1. Maurice asserts that a potential conflict of interest or lack of diligence on the part of a debtor in possession does not support a plain meaning interpretation of § 546(a)(1) because Congress has provided other remedies in the event that a debtor in possession refuses to bring an avoidance action or causes delay in the administration of the estate. For example, a trustee may be appointed in a Chapter 11 reorganization for cause at any time, 11 U.S.C.A. § 1104(a)(1) (West 1993); if a debtor in possession unreasonably delays the administration of the estate, the case may be converted to a Chapter 7 liquidation, 11 U.S.C.A.§ 1112(b)(3) (West 1993); and if a debtor in possession fails to bring an avoidance action, a creditors' committee may be appointed to bring an action on behalf of the estate, 11 U.S.C.A. § 1103(c)(2) (West 1993). None of these provisions, however, remedies the time lost due to any impropriety on the part of the debtor in possession.

prejudice to unsecured creditors. Further, a debtor in possession's lack of incentive to prosecute avoidance actions establishes a strong basis for not beginning the clock upon the "appointment" of a debtor in possession.[2] Additionally, we note that Maurice has not argued that the plain meaning of § 546(a)(1) is contrary to the legislative history of § 546(a)(1)[3] or that an application of the plain language of the statute would thwart an obvious purpose of § 546(a)(1). For these reasons, we conclude that the bankruptcy court properly interpreted the two-year statute of limitations in § 546(a)(1) as beginning to run only upon the appointment of one of the trustees specified in § 546(a)(1). Because a trustee had not been appointed when the action was filed, the Committee's action is not time barred.

### III.

After reviewing Maurice's remaining contentions regarding the denial of its motion to strike and the propriety of the grant of summary judgment for the Committee, we con-

---

**2.** Moreover, at least one court has concluded that the doctrine of laches applies to limit the time period within which a debtor in possession may bring an avoidance action. *See In re Brin–Mont*, 154 B.R. at 907. Because Maurice did not raise the doctrine of laches on appeal, we need not address this issue.

**3.** The legislative history of § 546(a)(1) is at best inconclusive. *See* S.Rep. No. 95–989, ·95th Cong., 2d Sess. 87 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5872. The only other available evidence of congressional intent suggests that Congress did not intend the two-year statute of limitations to begin to run against debtors in possession upon the filing of a petition. Under the Bankruptcy Act, a trustee had only two years to bring a preference action, but this two-year period was tolled during the pendency of a reorganization case. *In re Hooker*, 162 B.R. at 436. When Congress enacted the Bankruptcy Code, it eliminated the tolling provision for trustees, but did not address such a change for debtors in possession. The absence of any congressional action on this point evinces an intent to continue to "toll" the limitations period in Chapter 11 reorganizations unless and until a trustee is appointed. *See Dewsnup v. Timm*, —— U.S. ——, ——, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992) (stating that courts should be reluctant to "interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the

---

clude that they are without merit. Accordingly, we affirm.

*AFFIRMED.*

---

subject of at least some discussion in the legislative history").

Further, by the time Congress promulgated amendments to the Bankruptcy Code in 1984 and again in 1986, bankruptcy courts had held that the two-year statute of limitations in § 546(a)(1) does not begin to run in Chapter 11 cases upon the "appointment" of a debtor in possession. *See, e.g., Steel, Inc. v. Berry (In re Steel, Inc.)*, 55 B.R. 426 (Bankr.E.D. La.1985); *Alithochrome, Corp. v. East Coast Finishing Sales Corp. (In re Alithochrome, Corp.)*, 53 B.R. 906 (Bankr.S.D.N.Y.1985); *Boatman v. E.J. Davis Co. (In re Choice Vend, Inc.)*, 49 B.R. 719 (Bankr. D.Conn.1985); *J.E. Jennings, Inc. v. William Carter Co. (In re J.E. Jennings, Inc.)*, 46 B.R. 167 (Bankr.E.D.Pa.1985); *Edleman v. Gleason (In re Silver Mill Frozen Foods, Inc.)*, 23 B.R. 179 (Bankr.W.D. Mich.1982); *One Mktg. Co. v. Addington & Assocs. (In re One Mktg. Co.)*, 17 B.R. 738 (Bankr.S.D. Tex.1982). If Congress had intended a contrary interpretation of § 546(a)(1), it could have amended § 546(a)(1) to overrule these cases—particularly in 1986, when it amended§ 546(a)(1) by adding the reference to § 1202. But, it did not. We recognize that both of these arguments rely on congressional silence or inaction and as such they constitute modest evidence of what Congress intended. However, as we stated at the outset, these episodes of silence or inaction constitute the only available evidence of congressional intent.